UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARISE CAUDLE

        Plaintiff,                    CIVIL ACTION NO. 05-CV-73800-DT

    vs.                              DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

### REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** (Docket # 13), that Plaintiff's Motion for Summary Judgment be **DENIED** (Docket # 12), that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**, and that Plaintiff's Motion to Amend the Complaint (Docket # 11) be **DENIED**.

**II.  PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Charise Caudle filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on October 10, 2003. (Tr. 39-41, 162-64). She alleged she had been disabled since June 27, 2003 due to the limited use of her arm and the pain in her right arm, neck, shoulder and back. *Id.* Plaintiff's claims were initially denied in December 2003. (Tr. 26-30, 165-69). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ). (Tr. 31). A hearing took place before ALJ John L. Christensen on November 17, 2004. (Tr. 188-229). Plaintiff elected to proceed without representation at the hearing. (Tr. 16, 190-91). The ALJ denied Plaintiff's claims in an opinion issued on May 25, 2005. (Tr. 16-24). The Appeals Council denied review of the ALJ's decision on September 22, 2005 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 5-12). Plaintiff, acting *in pro per*, appealed the denial of her claims to this Court, and both parties have filed motions for summary judgment. Plaintiff has also filed a Motion to Amend the Complaint.

### III. MEDICAL HISTORY

Medical reports dated November 2002 to December 2003 were presented to the ALJ for consideration. (Tr. 94-161). In February 2002 Plaintiff had a tooth extracted, which resulted in chronic osteomyelitis on the right side of her jaw.[1] (Tr. 158). Dr. David Aronoff, an infectious disease specialist, treated Plaintiff with pain medication and antibiotics via an IV PIK line inserted into her left arm. (Tr. 94, 100, 111-12, 114-17, 119, 158). In January 2003 Plaintiff

---

[1] Osteomyelitis is an inflammation of the bone marrow and adjacent bone. *Stedman's Medical Dictionary* 1284 (27th ed. 2000).

was also involved in an automobile accident, which damaged her PIK line. No other problems were reported. (Tr. 94-99).

Several debridements were performed in 2003 to treat Plaintiff's osteomyelitis.[2] (Tr. 116-17). Plaintiff showed improvement but her osteomyelitis continued. (Tr. 111, 114). A CT scan taken in April 2003 also revealed a fracture in Plaintiff's right mandible.[3] (Tr. 117). Plaintiff subsequently underwent reconstructive surgery in June 2003 to repair the fracture to her right mandible and to eradicate the osteomyelitis. During the surgery, the doctors first performed a tracheostomy to establish an airway. The doctors then formed a mandible out of a titanium bar and secured it to Plaintiff's jaw with screws. Bone was thereafter removed from Plaintiff's right shoulder and grafted onto Plaintiff's mandible. (Tr. 105-10). The doctors also inserted a feeding tube into Plaintiff. *Id.*

Dr. Theodore Teknos' records from July 2003 note that Plaintiff was doing well after her surgery and her incisions had healed. Plaintiff's feeding tube was also removed. Plaintiff was continued on antibiotics. (Tr. 103-04).

In August 2003 Dr. Teknos reported that Plaintiff was to return to work on September 1, 2003 but that she might "be limited in her ability to use her right arm for extended periods

---

[2] "Debridement" is "the removal of foreign material and devitalized or contaminated tissue from or adjacent to a traumatic or infected lesion until surrounding health tissue is exposed." *Dorland's* at 430.

[3] The mandibula or the mandible is "the horseshoe-shaped bone forming the lower jaw." *Dorland's Illustrated Medical Dictionary* 984 (28th ed. 1994).

of time postoperatively due to the nature of her surgery." (Tr. 102). In September 2003 Plaintiff reported to Dr. Janice Farrehi that she had post-operative pain in her right arm, especially when reaching overhead. (Tr. 132). She was released to work on the condition that Plaintiff perform no overhead movements or stretching out with her right arm in a forward motion until she was evaluated by Dr. Dara Headrick. (Tr. 146).

Dr. Headrick examined Plaintiff on October 2, 2003. Dr. Headrick noted that Plaintiff was alert, oriented and cooperative. Her gait was normal. Plaintiff's surgical scars were well-healed although there was significant scar tissue near her shoulder and jaw incisions. Plaintiff had full range of cervical motion except for a 30 degree deficiency when bending to the left. Passively, Plaintiff had full range of motion with her right shoulder. However, Plaintiff's could only actively flex and abduct her right shoulder to a 90 degree angle. (Tr. 145). Dr. Headrick provided Lidoderm patches to Plaintiff to help with her pain and continued her on Naprosyn. Dr. Headrick also started Plaintiff on a physical therapy program to help loosen the scar tissue and strengthen Plaintiff's right upper extremity. Dr. Headrick indicated that Plaintiff's prognosis for improvement was "quite good" and released Plaintiff from work until their next appointment on November 3, 2003. (Tr. 145-46). No other work release orders are contained within the record.

A state agency physician reviewed Plaintiff's medical records on December 12, 2003 and completed a Physical Residual Functional Capacity Assessment Form ("PRFCAF"). The

physician opined that Plaintiff retained the capacity to perform light work limited to no more than frequent overhead reaching with Plaintiff's right arm. (Tr. 148-155).

IV.  **HEARING TESTIMONY**

    A.  **Plaintiff's Testimony**

Plaintiff was born in December 1972. She is a single mother of three children. She completed the 11th grade in high school and obtained a GED. (Tr. 195, 198). Plaintiff is also right-handed. (Tr. 196).

The ALJ asked Plaintiff to discuss her symptoms, which resulted from her reconstructive surgery. Plaintiff testified that her symptoms include: (1) uncontrollable drooling; (2) lack of feeling on the right side of her mouth; (3) constant pain in her back, right shoulder, arm, ear and jaw; (4) weakness in her right arm and shoulder; (5) pinching of her right arm due to nerve damage; (6) difficulties with the volume of her speech due to her tracheostomy; (7) problems sleeping due to pain and her medication; (8) stiffness/paralysis of her right arm in cold weather worsened by heavy clothing which irritates the incisions on her back and underarm; (9) right eye vision that fades in and out; (10) weakened neck muscles; and (11) occasional swelling of the right side of her face. (Tr. 197, 204, 212, 214, 218-20, 222-23).

Plaintiff further testified that she takes Naproxen or Nyprosen for her pain but that the medication is not always effective and that she does not have the financial means to have her vision checked or to replace the teeth that had been surgically removed. She also states

that she must nap during the day. Plaintiff further testified that with the exception of her ability to speak and eat, her condition had not improved. (Tr. 197, 210, 214, 219, 221-22).

The ALJ also asked the Plaintiff about her exertional limitations. Plaintiff testified that she can drive but only for about 40 minutes before her arm starts to hurt and for about an hour before her back begins to hurt. (Tr. 196-97). She also stated that she begins to have right arm pain after about a ½ hour of repetitive motion, cannot perform such repetitive motion for more than an hour, will use her left arm to assist her right arm, and needs to rest her arm for two hours before using it again. (Tr. 205-06). However, she cannot use her right arm for hours in any capacity if the nerves begin to pinch. (Tr. 206-07). Plaintiff also cannot: (1) sit in one position for longer than an hour before feeling discomfort; (2) continuously bend or twist without causing pain in her back, shoulder and right arm; (3) vacuum; (4) lift a laundry basket or fold laundry; (5) grocery shop; (6) do yard work; or (7) comb her daughter's hair. (Tr. 207, 209-10, 215, 218-19). Plaintiff has no difficulty walking, washing/drying laundry, using her lower extremities, cooking, performing some housework, or caring for her own personal needs and hygiene although it now takes her longer to complete these tasks. (Tr. 209-10, 215, 218).

B.      <u>Vocational Expert's Testimony</u>

Melody Henry, a certified rehabilitation counselor, testified as a vocational expert at the hearing. (Tr. 34, 223-29). The ALJ asked Ms. Henry about the type and number of jobs

available in Michigan for a hypothetical individual of Plaintiff's age, education, and work experience[4] and who has the residual functional capacity ("RFC") to perform light work limited by: (1) the ability to only occasionally use the right upper, dominant extremity for any reaching or pulling; and (2) the need to avoid all exposure to freezing temperatures on a sustained basis.  Ms. Henry testified that there are 2,100 counter clerk positions, 2,000 rental clerk positions, and 4,300 hostess positions available for such a hypothetical individual.  (Tr. 226).  However, Ms. Henry also testified that all work would be precluded for the same hypothetical if that individual could not perform simple, routine tasks on a sustained basis due to difficulties with concentration, persistence and pace associated with the side effects of medication.  (Tr. 226-27).

## IV.   THE ALJ'S FINDINGS

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 27, 2003.  (Tr. 23).  He further found that Plaintiff's impairments of status post motor vehicle accident, status post osteomylitis, right mandible injury repair and status post reconstruction of the right mandible are severe but that they do not meet or medically equal a listed severe impairment.  (Tr. 23).  The ALJ also surmised that Plaintiff could not perform her past relevant work but that she retained the residual

---

[4] Ms. Henry had previously submitted a vocational analysis form indicating that Plaintiff's prior work as a gas station attendant, housekeeper and retail cashier was categorized as light, unskilled work.  This form was made part of the record during the hearing.  (Tr. 92, 225).

functioning capacity ("RFC") to perform unskilled, light work involving only the occasional use of her right upper, dominant extremity for any reaching or pulling and requiring no exposure to cold and freezing temperatures on a sustained basis. *Id.* Plaintiff's claim was denied because the ALJ determined that there were other jobs available in the economy for a person of Plaintiff's age, educational level, and residual functional capacity. (Tr. 23-24). Furthermore, the ALJ determined that Plaintiff's allegations about her limitations were not totally credible. (Tr. 23).

## V.   LAW AND ANALYSIS

### A.   STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.   FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)   he was not presently engaged in substantial gainful employment; and

(2)   he suffered from a severe impairment; and

(3)   the impairment met or was medically equal to a "listed impairment;" or

(4)   he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a

finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.  **Arguments**

Plaintiff challenges the ALJ's non-disability finding by asserting that the ALJ's RFC fails to fully account for her physical and mental limitations. Defendant asserts that substantial evidence supports the ALJ's determination.

1.  **Plaintiff's Physical Limitations**

Plaintiff first contends that the ALJ erred in finding that she has the RFC to perform a limited range of unskilled, light work involving the occasional use of her right upper extremity for any reaching or pulling and requiring no exposure to cold and freezing temperatures on a sustained basis.[5] The ALJ's finding is supported by substantial evidence. It is consistent with

---

[5] Light work activity is defined as the ability to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category sometimes requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a person must have the ability to do substantially all of these activities. If someone can do light work, the Commissioner will find that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Dr. Headrick's examination, which indicated that Plaintiff had difficulty flexing and abducting her right shoulder more than 90 degrees. Further, as Defendant notes, none of Plaintiff's treating physicians imposed any restrictions on Plaintiff's ability to work that were not incorporated into the ALJ's RFC. The ALJ's RFC finding is also supported in part by the state agency's opinion, which was based upon a review of Plaintiff's medical records.

Nevertheless, Plaintiff argues that the ALJ improperly discounted her allegations of disabling pain and other limitations when forming his RFC finding. Specifically, she claims that the ALJ ignored her claims that she cannot perform any work because she: (1) cannot use her right arm even occasionally; (2) has constant pain she experiences in her gums, jaw, right shoulder, neck, back and right ear; (3) has nerve damage that causes uncontrollable drooling and the vision in her right eye to go in and out; and (4) needs to nap throughout the day due to the effects of her medication.[6]

The ALJ considered Plaintiff's complaints of disabling pain and symptomology but did not find them totally credible. Social Security regulations prescribe a two-step process for evaluating complaints of pain and other symptoms. The plaintiff must establish an underlying

---

[6] Plaintiff also asserts the ALJ failed to account for her alleged weight loss and choking on hair growing on her gums caused by the use of underarm skin tissue when fixing her gums. Plaintiff informed the Court at the hearing that she had previous weight loss but that she was "close to around [her] normal weight" and that she is able to eat. (Tr. 196, 212-13). She did not testify about hair growing on her gums or about choking. Furthermore, Plaintiff does not explain how any of these symptoms, even if presented to the ALJ, should have resulted in any functional limitations affecting her ability to work.

medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff had impairments that could cause some pain, limitations and restrictions. However, he found that the severe and debilitating nature of Plaintiff's alleged pain and other symptoms were not totally credible and provided reasons for this conclusion. The ALJ noted the lack of any objective medical evidence confirming the existence of the alleged symptoms. (Tr. 21). He also commented that none of Plaintiff's physicians had found Plaintiff disabled from all work or had imposed any limitations on her ability to work other than those already incorporated into the RFC. This included the fact that none of Plaintiff's doctors had directed Plaintiff to nap during the day. *Id.* Plaintiff also did not receive regular treatment nor was such regular treatment recommended. *Id.* The

ALJ further found that Plaintiff's ability to perform various daily activities, such as cooking and caring for her three children and her own personal needs was inconsistent with Plaintiff's claimed inability to perform all work. (Tr. 20-21).

The issue is whether these credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999). Under this standard, the Court concludes that the ALJ's credibility determinations are supported by substantial evidence.

Plaintiff also presents to this Court an undated disability statement and a letter dated April 12, 2006 from Dr. Seif Saeed to contradict the ALJ's conclusion that none of Plaintiff's treating physicians have found Plaintiff unable to work due to her impairments. Dr. Saeed notes that Plaintiff's osteomylitis and subsequent reconstructive surgery have left her with right facial neuropathy and right shoulder pain, which renders her unable to perform any work. (Pl.'s Mot. for Summ. J. at Ex. 2; Pl.'s Reply to Def.'s Mot. for Summ. J. at Ex. 1).

However, Dr. Saeed's disability statement and report were not before the ALJ at the time he rendered his written opinion nor were they presented to the Appeals Council for review.

Consequently, the Court cannot consider these documents in determining whether substantial evidence supports the ALJ's non-disability determination. *Cotten v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).

The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).

The party seeking remand has the burden of showing that it is warranted. *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d 709, 711 (6th Cir. 1988) (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)).

Plaintiff has not asked for a sentence six remand assuming instead that this Court could consider Dr. Saeed's disability statement and letter. Consequently, Plaintiff has made no attempt whatsoever to meet her burden of showing that remand is warranted.

Based upon the information before the Court, a remand based upon this evidence would not be warranted. The evidence is new because it was created after the ALJ rendered his decision and Plaintiff has not shown "good cause". *See Oliver v. Sec'y of Health & Human Srvs.*, 804 F.2d 964, 966 (6th Cir. 1986).

More importantly, the new evidence presented by Plaintiff is not "material". The exact nature of Dr. Saeed's treatment relationship with Plaintiff is unknown so it is not clear that his opinion is entitled to any deference. *See* 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 4016.927(d)(2)312; *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). Even if such deference were appropriate, Dr. Saeed's opinion is conclusory and unsupported by any medical findings thereby rendering it non-binding on the ALJ. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992 ) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). Furthermore, Dr. Saeed's unsupported opinion is contradicted by other abundant evidence of record. Additionally, Dr. Saeed's disability statement does not indicate his opinion that Plaintiff was unable to work during the period of alleged disability at issue here. The form is also incomplete and lacks any information about Plaintiff's work and period of inability to work. Based upon the foregoing,

the Court concludes that a sentence six remand for consideration of new evidence is not warranted in this case.

### 2. Plaintiff's Mental Limitations

Plaintiff further asserts that the ALJ's RFC is flawed because it does not account for her mental limitations. Specifically, Plaintiff asserts that she has been diagnosed with depression, post-traumatic stress disorder, and an adjustment disorder for which she has been prescribed medication. (Pl.'s Mot. for Summ. J. at 4-5; Pl.'s Reply to Def.'s Mot. for Summ. J. at 2, Ex. 3).

As noted by Defendant, Plaintiff did not present any medical evidence to the ALJ suggesting that she suffers from a mental impairment. The medical records do not indicate that Plaintiff reported any mental health problems to her doctors. She was not diagnosed with any mental health problems or prescribed any medications to treat such problems. Furthermore, Plaintiff did not testify that she suffers from any mentally disabling impairment although the ALJ gave Plaintiff an opportunity to discuss any such symptoms. Therefore, the ALJ did not err by failing to consider any mental limitations when determining Plaintiff's RFC.

Plaintiff again invites this Court to examine new evidence. Specifically, she directs the Court's attention to a progress report of Dr. Michael Gotlib dated June 7, 2005. The report indicates that it was Dr. Gotlib's first meeting with Plaintiff. During a ½ hour evaluation, Dr. Gotlib determined that Plaintiff has an adjustment disorder with depression and prescribed her

medication.7 As stated before, the Court cannot consider Dr. Gotlib's report because it was not presented to the ALJ or the Appeals Council. And, similarly, Plaintiff has not made any attempt to meet her burden for establishing a basis for remand.

Although this evidence is also new, Plaintiff has again has arguably not established good cause. Furthermore, Dr. Gotlib's report is not material. Dr. Gotlib did not have a treatment with relationship with Plaintiff and had only examined her on one occasion for a ½ hour. Therefore, his opinion is entitled to no particular deference. Furthermore, his diagnosis appears to be entirely based on Plaintiff's statements and there are no clinical tests or findings commented upon within the report supporting the veracity of those statements. Dr. Gotlib also writes that Plaintiff "has trouble now with sleep, interest, guilt, energy and concentration," which indicates that his diagnosis is related to Plaintiff's present alleged symptoms but is not relevant to the time period of disability at issue here. Furthermore, Dr. Gottlib's report does not contain any findings that Plaintiff's adjustment disorder with depression or her medication have

---

7    Dr. Gotlib also had Plaintiff sign a suicide contract since she reported that she had previously attempted to commit suicide with the last attempt being on May 25, 2005. This was the same day the ALJ rendered his written opinion. Contrary to Plaintiff's assertion, there is also no indication that Plaintiff has been diagnosed her with post-traumatic stress disorder.

Adjustment disorders are, by diagnostic classification, short-term psychological responses to life stressors, typically lasting less than six months. *See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 309.40 (4th ed. 1994).

affected Plaintiff's ability to work. Therefore, it poses no basis for disturbing the ALJ's RFC finding. Consequently, the Court concludes that a sentence six remand is not warranted.[8]

### 3. Plaintiff's Motion to Amend Her Complaint

Plaintiff also filed a Motion to Amend Complaint. Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

At this juncture, both parties have filed their Motions for Summary Judgment and the Court, based upon the foregoing, recommends that Defendant's Motion for Summary Judgment be granted and the case dismissed. The Court's review of Plaintiff's Motion to Amend suggests that allowing Plaintiff to amend the complaint to merely reiterate the facts of which the Court is already aware would not affect its recommendation. Therefore, it would be futile to allow Plaintiff to amend the complaint. Consequently, the Court recommends that Plaintiff's Motion to Amend the Complaint be **DENIED**.

---

[8] Plaintiff raises no objection to the ALJ's hypothetical posed by the ALJ to the VE. The hypothetical fully incorporates the RFC found by the ALJ. Thus, the hypothetical provided the VE with an accurate description of Plaintiff's exertional and non-exertional impairments. Therefore, the VE's testimony that there exist a significant numbers of jobs in the Michigan for someone of Plaintiff's age, vocational profile, education and RFC is sufficient evidence to support a finding that Plaintiff is not disabled. *Varley*, 820 F.2d at 779.

## RECOMMENDATION

The Commissioner's decision is supported by substantial evidence. Defendant's Motion for Summary Judgment (Docket # 13) should be **GRANTED**. Plaintiff's Motion for Summary Judgment (Docket # 12) should be **DENIED** and her Complaint **DISMISSED WITHOUT PREJUDICE**. Given this recommendation, the Court further recommends that Plaintiff's Motion to Amend the Complaint (Docket # 11) be **DENIED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 03, 2006               s/ Mona K. Majzoub
                                       **MONA K. MAJZOUB**
                                       **UNITED STATES MAGISTRATE JUDGE**

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record and Charise Claudle on this date.

Dated: November 03, 2006               s/ Lisa C. Bartlett
                                       Courtroom Deputy